**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAROD STYLES, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| CHICAGO POLICE OFFICERS JAMES CASSIDY (#2027), | ) |
| KENNETH BOUDREAU (#20435), LUKE DALY (#21064), | ) |
| FRANCIS VALADEZ (#21008), BERNARD RYAN | ) |
| (#20867), JOHN BLOORE (#3081), J. FINE (#20213), | ) |
| STEVEN TERRELL (#4574 and/or #40274), | ) |
| ESTATE OF THOMAS COUGHLIN (#20983), | ) |
| THOMAS  RICHARDSON (#3385), | ) JURY DEMAND |
| DWAYNE DAVIS (#21075), LARRY TUIDER (#1638), | ) |
| FRED BONKE (#2108), UNIDENTIFIED EMPLOYEES | ) |
| OF THE CITY OF CHICAGO, FORMER COOK COUNTY | ) |
| STATE'S ATTORNEY JOSEPH ALESIA, CITY OF | ) |
| CHICAGO, AND COOK COUNTY ILLINOIS | ) |
| | ) |
|   Defendants. | ) |
| | ) |

## **COMPLAINT**

Plaintiff, LAROD STYLES, by his undersigned attorneys, complains of Defendants,

Chicago Police Department Officers JAMES CASSIDY, KENNETH BOUDREAU, LUKE

DALY, DWAYNE DAVIS, FRANCIS VALADEZ, BERNARD RYAN, JOHN BLOORE, J.

FINE, STEVEN TERRELL, the ESTATE of THOMAS COUHGLIN, the ADMINISTRATOR

of the ESTATE of THOMAS RICHARDSON, SERGEANT LARRY TUIDER, SERGEANT

FRED BONKE, former COOK COUNTY ASSISTANT STATE'S ATTORNEY JOSEPH

ALESIA, the CITY OF CHICAGO, as-yet UKNOWN CITY OF CHICAGO EMPLOYEES, and

COOK COUNTY ILLINOIS as follows:

## INTRODUCTION

1.     In 1998, Larod Styles was convicted of the execution-style murders of Khaled Ibrahim and Yousef Ali, a brutal crime he did not commit.  Arrested at the age of 16, he spent more than half his life in prison before ultimately being exonerated, released from prison, and ultimately certified innocent.

2.     Larod Styles' wrongful conviction was no accident.  Determined to close the murder cases, the Defendants – the Defendant Officers and Defendant former-Assistant State's Attorney Joseph Alesia – coerced false and inculpatory statements from Larod Styles and his codefendants.  They also withheld exculpatory evidence from the trial prosecutor and from the defense that would have proven Plaintiff's innocence.

3.     As a result of the Defendants' misconduct, Larod Styles was charged, wrongfully convicted, and sentenced to life in prison without the possibility of parole.

4.     Nineteen years after they were convicted, and more than 21 years after they were arrested and taken into custody by Defendants, the State dismissed the charges against Larod Styles and his co-defendants because new fingerprint testing and other evidence confirmed that they were innocent of the murders.

5.     The misconduct that gave rise to Larod Styles' wrongful prosecution and conviction was not an aberration. The Chicago Police Department (the "Department"), including officers working within the Department "Area" where this investigation occurred, engaged in a pattern of unlawfully coercing confessions over a period of years, frequently targeting young African-American men in order to close unsolved cases through overzealous and unlawful methods of interrogation.  Defendants James Cassidy and Kenneth Boudreau, in particular, have

long track records of coercing false confessions and fabricating evidence against those in their custody. The City of Chicago permitted these officers to act with impunity for years.

6. Plaintiff Larod Styles now files this civil rights action to bring the Defendants' misconduct to light, and to ensure that they are finally held accountable for their actions. Although Plaintiff has won back his freedom, he will never regain the lost years of his life in which he was incarcerated for crimes he did not commit. This lawsuit seeks redress for these grievous injuries.

## JURISDICTION AND VENUE

7. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein occurred in this judicial district, the parties reside in this district, and Defendant City of Chicago is a municipal corporation located here.

## THE PARTIES

9. Plaintiff Larod Styles is 38 years old. At the time of the murders, Larod was a high school student, and living with his Grandparents at 7354 S. Oakley in Chicago. He had turned 16 years old just a few weeks before the murders and his arrest.

10. At all relevant times, James Cassidy, Kenneth Boudreau, Bernard Ryan, John Bloore, Thomas Coughlin, Dwayne Davis, Luke Daly, J. Fine, Steven Terrell, Thomas Richardson, and Frances Valadez were officers with the Chicago Police Department, employed by Defendant City of Chicago, and acting within the scope of their employment. They are sued in their individual capacities. Detective Coughlin is deceased and, accordingly, his Estate is

named as a party-defendant herein. These individuals are referred to collectively as "Defendant Officers."

11.    At all relevant times, Defendants Larry Tuider and Fred Bonke were sergeants with the Chicago Police Department, employed by Defendant City of Chicago, and acting within the scope of their employment. They are sued in their individual capacities.

12.    At all relevant times, Defendant Joseph Alesia was an Assistant State's Attorney in the Cook County State's Attorney's Office. He is sued in his individual capacity.

13.    The Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

14.    Defendant Cook County is a governmental entity within the State of Illinois, and it is obligated to indemnify employees of the Cook County State's Attorney's Office.

**THE MURDERS OF KHALED IBRAHIM AND YOUSEF ALI**

15.    At approximately 6:30 p.m. on December 4, 1995, two men perused cars at Elegant Auto, a used car lot on Chicago's South Side. While there, the men examined and touched two vehicles. They then went to Prestige Auto, a car lot next door, where they examined a third car.

16.    At around 7:00 p.m., the two men returned to Elegant Auto, entered an office at the back of the lot, and open fired on owners Khaled Ibrahim and Yousef Ali. The perpetrators killed Ibrahim and Ali execution-style, but left two other employees who were also in the Elegant Auto office alive.

17.    The perpetrators then stole two cars from the lot and sped away from the scene. The stolen cars were not the same vehicles that the men had examined and touched earlier that evening.

18. CPD forensic investigators arrived at the scene at around 7:30 p.m. that night; lifted fingerprints from the two cars at Elegant Auto and the one car at Prestige Auto that the perpetrators had touched.

19. At approximately 2:00 a.m. on December 5, 1995, CPD officers recovered the two stolen cars five miles away from the crime scene. They also recovered marketing stickers that had been displayed on the cars and subsequently were peeled off. Fingerprints were lifted from both the cars and from the stickers.

20. None of these recovered prints matched either Larod Styles or any of his eventual co-defendants.

**Defendant Officers Arrest and Obtain Coerced Inculpatory Statements From Teenagers Troshawn McCoy and LaShawn Ezell**

21. On the afternoon of December 6, 1995, the day after the murders, Defendant Officers including Detectives Cassidy, Davis, and Daley arrested 17-year-old Troshawn McCoy at his high school and took him to the Area One police station, located at 51st and Wentworth.

22. Although the Defendants had no reason to believe that Mr. McCoy was involved in the murders, they harshly interrogated the teenager, isolating him, denying him the right to counsel, and feeding him information about the murders. The Defendants used such tactics to coerce him into adopting their version of events.

23. Even though he was innocent of the crimes, Troshawn McCoy eventually succumbed to the Defendants' manipulative conduct and falsely implicated himself and three other teenagers—Charles Johnson, LaShawn Ezell, and Plaintiff Larod Styles—in the murders. He gave a false and inculpatory statement to certain of the Defendant Officers and to Defendant Alesia, who participated in the unlawful interrogation.

24.     In his transcribed statement, Mr. McCoy parroted the Defendant Officers' concocted scenario in which he and Mr. Ezell acted as lookouts for Charles Johnson and Larod Styles, who planned to steal a car from Elegant Auto.  Mr. McCoy falsely stated that he and Mr. Ezell watched Mr. Johnson and Mr. Styles enter the Elegant Auto office, heard gunshots seconds later, and then saw Mr. Johnson and Mr. Styles run out and drive away in the two stolen cars from the lot.

25.     The Defendant Officers, including Defendant Cassidy, knew that Mr. McCoy's statement was coerced and false and merely a recitation of their fabrications.  Nevertheless, the Defendant Officers used Mr. McCoy's coerced confession to arrest and interrogate Mr. Ezell, Mr. Styles, and Mr. Johnson, all without probable cause.

26.     The Defendant Officers, including Detectives Davis and Valadez, arrested 15-year-old LaShawn Ezell at around 4:15 p.m. on December 5, 1995.

27.     Using many of the same techniques that they used on Mr. McCoy, the Defendant Officers interrogated Mr. Ezell for over six hours.  These officers, including Defendant Coughlin, with the participation and cooperation of Defendant Alesia, obtained a false and involuntary inculpatory statement from the young teenager around 11:00 p.m. that night.

28.     Mr. Ezell was interrogated outside the presence of a parent, guardian or an attorney.  Although a Youth Officer was present for at least part of Mr. Ezell's interrogations and false confession, he did nothing to intervene to prevent the false confession, or to protect Mr. Ezell's interests.

**Defendant Officers Arrest, Interrogate, and Obtain a**
**False and Involuntary Inculpatory Statement from Larod Styles**

29.     The Defendant Officers, including Detectives Bloore, Coughlin, and Fine, arrested Larod Styles at his home at around 5:00 p.m. on December 5, 1995.  Mr. Styles had just turned 16 years old two weeks earlier, on November 19, 1995, and did not even have a driver's license.

30.     Despite having knowledge of Larod Style's young age, the Defendant Officers interrogated him off and on for several hours outside the presence of a parent, guardian, attorney or other adult interested in his welfare.

31.     It was only after Mr. Styles had been interrogated multiple times that the Defendant Officers brought in a Youth Officer, Defendant Steven Terrell.  Officer Terrell, however, never actually spoke to Mr. Styles, did nothing to intervene to prevent the false confession, and did not protect Mr. Styles' interests or ensure that his rights were protected during the interrogation(s).  Officer Terrell participated with other Defendants in obtaining a false inculpatory statement from Mr. Styles.

32.     After being arrested, the 16 year old Mr. Styles was taken to the police station, isolated and handcuffed to the wall of an interrogation room, and interrogated over the course of several hours during which Mr. Styles adamantly denied any involvement in the murders.

33.     The Defendant Officers made no notes or police reports documenting Mr. Styles' repeated statements that he was innocent of the crimes and that he had no involvement in those crimes.

34.     Unsatisfied with Mr. Styles' protestations of innocence, the Defendant Officers worked to overbear Mr. Styles' will and force him to falsely implicate himself in the murders. The Defendant Officers' coercive tactics included:

    a.  Threatening Mr. Styles that he would spend the rest of his life in prison if he failed to cooperate and adopt the confession as fabricated by the Defendant Officers;

    b.  Shouting at Mr. Styles, swearing at Mr. Styles, and telling him that he would never see his family again unless he told them what happened;

    c.  Physically hitting Mr. Styles at times after he was taken into custody;

    d.  Falsely telling Mr. Styles that if he adopted the Defendant Officers' fabricated confession, he could go home with his Grandmother, because in the Defendant Officers' fabricated confession Mr. Styles was not the shooter;

    e.  Promising Mr. Styles that he would receive a more lenient treatment if he gave them information they wanted about the murders;

    f.  Failing and refusing to contact Mr. Styles' Grandmother and/or allow Mr. Styles to speak with his Grandmother so she could advise and consult with him;

    g.  Failing and refusing to provide him with any adult interested in his welfare before or during their interrogation of the 16 year old Mr. Styles;

    h.  Depriving Mr. Styles of food and sleep for multiple hours while the 16 year old was repeatedly interrogated during the evening and nighttime hours of December 5, 1995;

    i.  Feeding Mr. Styles false facts they wanted him to repeat as though they were true, with promises of leniency if he did so; and

    j.  Falsely telling Mr. Styles that if he signed some papers they presented to him, he would be released to his Grandmother, who was at the police station.

35.     The Defendant Officers gave Mr. Styles information purportedly relating to the crime, including many facts that were not true and which they had also fed to Mr. Styles' codefendants during their interrogations.

36.     The Defendant Officers even made up a supposed motive for Mr. Styles – that he had committed the crime in order to get a new transmission for his Grandmother's car as a Christmas present.  In fact, as confirmed later by his Grandmother, Larod's Grandmother's car was never in need of a new transmission.

37.     After approximately 8 hours of intermittent interrogations of the barely 16 year old Mr. Styles – who was exhausted and sleep-deprived – the Defendant Officers, including Defendant Bloore, obtained a false and involuntary inculpatory statement from Mr. Styles around 1:00 a.m. on December 6, 1995.

38.     Defendant Alesia, who was at the police station and actively working on this investigation with the Defendant Officers starting in the afternoon of December 5, 1995 and continuing into the early morning hours of December 6, 1995, participated and/or cooperated in the coercive interrogation, obtaining a false inculpatory statement from Mr. Styles, and causing Mr. Styles to sign the false inculpatory statement.

39.     As a result of the coercive and unconstitutional tactics used by both the Defendant Officers and Defendant Alesia, at the end of the long series of interrogations, Mr. Styles gave what was a false inculpatory statement to a heinous crime that he did not commit.

40.     Very shortly after obtaining the false inculpatory statement from Mr. Styles, Defendant Officer Bloore began taunting Mr. Styles, saying, in substance, that he (Styles) unknowingly had signed what Defendant Officer Bloore said was a confession to the murders and laughed at Styles while waving the papers at Mr. Styles and saying, in substance, "You just signed your life away."  Hearing that, Mr. Styles attempted to get back the document he had signed so he could try to tear it up to indicate that any supposed confession was not true.

41.     Mr. Styles, handcuffed to the wall of an interrogation room, asked to speak with Defendant Attorney Alesia, claiming that he wanted to add something to his statement.

42.     When Defendant Alesia came into the room, Mr. Styles tried to grab the papers from Defendant Alesia, but Mr. Alesia slammed Mr. Styles' hand on the table and Mr. Styles was not able to get the papers.

**Officers Arrest, Interrogate, and Obtain a
False and Involuntary Inculpatory Statement from Charles Johnson**

43.     At around 5:30 p.m. on December 5, 1995, the Defendant Officers, including Detectives Bloore, Daly, and Davis, arrested Plaintiff Charles Johnson, then 19 years old, at his home.

44.     Mr. Johnson had just returned from a full day of work as a Coca-Cola Company delivery driver.

45.     The Defendant Officers handcuffed Mr. Johnson and placed him under arrest.

46.     When Mr. Johnson discovered that he had been arrested for murder, he immediately and consistently denied any involvement in the crime.

47.     Mr. Johnson was held in a small interrogation room where he was handcuffed to the wall.  Over the course of several hours, the Defendant Officers, including Defendants Cassidy, Boudreau, and Valadez, subjected Mr. Johnson to a hostile and aggressive interrogation concerning the double murder.  Throughout the interrogation, Charles Johnson proclaimed his innocence.

48.     Ultimately, at approximately 4:00 a.m. on December 6, 1995, Mr. Johnson signed a purported confession containing many of the same false facts the Defendant Officers had provided to him and his codefendants.

## PLAINTIFF'S CONVICTION

49.     In January of 1998, Larod Styles stood trial for the murders of Khaled Ibrahim and Yousef Ali.  Mr. Styles was tried jointly with Mr. Johnson, although before separate juries.

50.     Mr. Styles' statement was introduced against him at his trial, and was the State's primary evidence of Mr. Styles' guilt.  No physical or forensic evidence linked Mr. Styles to the crime.

51.     None of the Defendants who testified against Mr. Styles, including Defendants Bloore, Cassidy, Daly, Boudreau, and Alesia, disclosed how they obtained false and involuntary inculpatory statements from the four young men.

52.     As a result of the above-described misconduct on the part of the Defendants, Larod Styles was wrongfully convicted of first-degree murder and armed robbery, and sentenced to life in prison without the possibility of parole.

## PLAINTIFF'S EXONERATION

53.     Throughout his prosecution and incarceration, Larod Styles continued to maintain his innocence and pursued all possible legal avenues to prove it.

54.     In 2009, the Circuit Court of Cook County entered an order allowing the fingerprints from the murder investigation to be reanalyzed using the Automated Fingerprint Identification System (AFIS), technology that did not yet exist at the time of the wrongful convictions. That testing again excluded Mr. Styles, Mr. Johnson, Mr. Ezell, and Mr. McCoy. AFIS also matched the latent crime scene fingerprints to the fingerprints of three other previously unidentified men – convicted felons with no connection to Plaintiff or his co-defendants.

55.     On or about May 16, 2012, Mr. Styles filed a post-conviction petition based on

his actual innocence.

56.     Ultimately, after years of opposing any relief to Mr. Styles, in July 2016 the

State's Attorney's Office agreed that Mr. Styles was entitled to a new trial.  A few months later,

after his family was able to raise the required bail money, Mr. Styles was released on bail in late

October, 2016, pending a new trial, after spending almost 21 years in prison for a crime he did

not commit.

57.     On February 15, 2017, the Cook County State's Attorney's Office dismissed all

charges against Mr. Styles.

58.     On April 21, 2017, Mr. Styles filed a petition in the Circuit Court of Cook County

for a Certificate of Innocence.  The Circuit Court granted his petition and issued a Certificate of

Innocence to Larod Styles on January 22, 2018.

## THE DEFENDANT OFFICERS' PATTERN OF MISCONDUCT AND
## THE CITY'S POLICIES AND PRACTICES FACLITATING SUCH MISCONDUCT

59.     The Defendant Officers' egregious misconduct in this case was not an isolated

occurrence.   It was undertaken pursuant to, and proximately caused by, the *de facto* policies and

practices of the City of Chicago, acting through the CPD and its officers, which were in place at

all relevant times pertaining to this case.

60.     Larod Styles and his co-defendants were coerced into giving false and inculpatory

statements pursuant to such municipal policy.  The CPD and its detectives and police officers

have a long history of using physically and psychologically coercive interrogation tactics in

order to elicit statements from suspects and witnesses in criminal cases, causing hundreds of

false confessions and wrongful convictions in the City of Chicago.

61.     Defendants Cassidy and Boudreau, are two notorious homicide detectives who,

under disgraced Chicago Police Commander Jon Burge, had lengthy track records of coercing

and manufacturing confessions from youth as young as 7 years old. Both Defendants, as well as Defendant Valadez, conspired with other Area One detectives, including Sergeant Tuider, to coerce the false confessions of five teenagers from the Englewood neighborhood of Chicago (Terrill Swift, Harold Richardson, Michael Saunders, Vincent Thames and Jerry Fincher) in March 1995 – just six months before the events in this case occurred. Those teenagers were subsequently exonerated after each served almost 15 years in prison.

62.     At all relevant times, the City of Chicago had a policy and practice of coercing false confessions from those in police custody and using these statements to obtain wrongful convictions. Pursuant to this municipal policy and practice, CPD officers, including the officers at Area One, used interrogation tactics identical or similar to those employed by the Defendants in this case to extract confessions. These tactics included: (a) psychological intimidation and manipulation; (b) the use of clearly unreliable or coerced informants and/or witnesses; (c) the fabrication of confessions; (d) the misleading of parents/guardians and denial of access to their children during interrogations; (e) the denial of access to counsel; (f) the concealment of exculpatory information; (g) false promises of leniency in exchange for "cooperation" in the form of a confession; (h) sleep and food deprivation; and (i) the use of other unlawful tactics to secure the arrest, prosecution, and conviction of persons, including juveniles and teenagers, without regard to their actual guilt or innocence of the offense.

63.     Juveniles and young adults, in particular, including Mr. Styles, Mr. Ezell, Mr. McCoy, and Mr. Johnson, were the most vulnerable targets of this municipal policy. Law enforcement officers are trained to know that youth are inherently more suggestible, susceptible to manipulation, and frequently lack the ability to fully understand – let alone assert – their rights during an interrogation. As a matter of widespread custom and practice, CPD officers, including

but not limited to the Defendant Officers, exploited the vulnerability and suggestibility of the youth in their custody in order to obtain false confessions and close open cases. CPD detectives systematically denied juvenile and teenage suspects access to their guardians and to counsel, fed them details of the crime, made false promises of leniency, and generally subjected these youth to immense physical and psychological pressure until they "confessed." This practice is aided, perpetuated, and enhanced by the Chicago Police Department's policy and practice of using so-called "youth officers" to assist in coercion of juveniles during interrogations as set forth more fully in this Complaint.

64.     Also pursuant to municipal policy and practice, members of the CPD, including the Defendant Officers, systematically suppressed evidence pertaining to the fabricated and coerced confessions obtained in interrogations. This exculpatory information was concealed both from trial attorneys within the Cook County State's Attorney's Office and from criminal defendants and their counsel. In furtherance of this municipal policy and practice, CPD officers, including the Defendants in this case, repeatedly committed perjury while testifying in criminal proceedings in order to conceal their use of coercive interrogation techniques. Defendants Valadez, Cassidy, and Boudreau, in particular, committed this same misconduct in the aforementioned Englewood case in the same year Mr. Styles went to trial.

65.     At all relevant times, the City of Chicago also had in place *de facto* policies and practices by which CPD officers, including the Defendant Officers, were led to believe they could act with impunity, which served to facilitate and further their misconduct. These policies and practices include: failing to identify and track officers who commit serious misconduct; failing to investigate cases in which CPD officers are implicated in obtaining coerced and false confessions, as well as unfounded charges and wrongful convictions; failing to meaningfully

14

discipline officers accused of such unlawful conduct; and facilitating a code of silence within the CPD. Pursuant to the City's code of silence, CPD officers were trained and required to lie or remain silent about misconduct committed on the job by their fellow officers.

59. The City of Chicago's failure to train, supervise, and discipline its officers effectively condoned, ratified, and sanctioned the kind of misconduct that the Defendant Officers committed against Plaintiff and his co-defendants in this case.

60. The City of Chicago and officials within the CPD failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the patterns of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

61. All of the policies and practices described in the foregoing paragraphs were knowingly approved by City of Chicago policymakers, who were deliberately indifferent to the fact that CPD officers systematically violated the rights of the people they were sworn to protect.

## LAROD STYLES' DAMAGES

62. Larod Styles spent almost 21 years in prison for a crime he did not commit. He was locked up from the age of 16 to shortly before his 37th birthday. He must now attempt to make a life for himself outside of prison without the benefit of over two decades of life experiences—including most of his adolescence and the entirety of his young adulthood – which normally equip adults for that task.

63. Mr. Styles' emotional pain and suffering stemming from the loss of these formative years has been substantial. During his incarceration, Larod Styles was stripped of the basic pleasures of human experience, from the simplest to the most important, which all free

people enjoy as a matter of right. He missed the opportunity to begin living independently, to share holidays, births, funerals, and other life events with loved ones, to have girlfriends, to fall in love, to marry, and to pursue a career, and the fundamental freedom to live his life as an autonomous human being.

64.     As a result, Larod Styles has suffered tremendous damage, including but not limited to physical harm, mental suffering, and loss of a normal life, all proximately caused by Defendants' misconduct.

**Count I – 42 U.S.C. § 1983**
**Violation of Due Process**

65.     Each paragraph of this Complaint is incorporated as if restated fully herein.

66.     As described more fully above, the Defendant Officers, acting individually, jointly, and/or in conspiracy, deprived Larod Styles of his constitutional right to due process and to a fair trial.

67.     In the manner described more fully above, the Defendants Officers fabricated false inculpatory statements from Mr. Styles and his co-defendants, deliberately withheld and suppressed exculpatory evidence from the prosecutors and defense counsel, and fabricated false reports and other evidence, thereby causing the wrongful prosecution of Larod Styles.  Absent this misconduct, the criminal prosecution of Mr. Styles could not and would not have been pursued.

68.     The Defendant Officers' misconduct directly resulted in the unjust criminal conviction and continuing wrongful incarceration of Larod Styles, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

69.     As a result of this violation of his constitutional right to a fair trial, Larod Styles suffered injuries, including but not limited to the loss of his liberty, physical harm, severe emotional distress and anguish.

70.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Larod's clearly established constitutional rights.

**Count II ─ 42 U.S.C. § 1983**
**Fifth Amendment and Fourteenth Amendment**

71.     Each paragraph of this Complaint is incorporated as if restated fully herein.

72.     In the manner described more fully above, the Defendant Officers and Defendant Alesia, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, conducted an unconstitutional interrogation of Larod Styles, and coerced him into making involuntary statements implicating himself in the murders of Khaled Ibrahim and Yousef Ali, in violation of his rights secured by the Fifth and Fourteenth Amendments.

73.     The false and involuntary inculpatory statement Defendants obtained from Larod Styles was used against Mr. Styles to his detriment in his criminal case.  Without this statement, Mr. Styles never would have been prosecuted or convicted for the murders of Khaled Ibrahim and Yousef Ali.

74.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Styles' innocence.

75.     As a result of this violation of his constitutional right to a fair trial, Larod Styles suffered injuries, including but not limited to the loss of his liberty, physical harm, severe emotional distress and anguish.

**Count III – 42 U.S.C. § 1983**
**Failure to Intervene**

76.     Each paragraph of this Complaint is incorporated as if restated fully herein.

77.     In the manner described above, during the constitutional violations described herein, one or more of the Defendants, including the Defendant Officers and Defendant Alesia, stood by without intervening to prevent the violation of Larod Styles' constitutional rights, even though they had a reasonable opportunity to do so.

78.     As a result of the misconduct described in this count, Larod Styles suffered injuries, including but not limited to the loss of his liberty, physical harm, severe emotional distress and anguish.

79.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Styles' constitutional rights.

**Count IV – 42 U.S.C. § 1983**
**Supervisory Liability**

80.     Each paragraph of this Complaint is incorporated as if restated fully herein.

81.     The violation of Plaintiff's constitutional rights as described above was proximately caused by the deliberate indifference and/or recklessness of the Supervisory Defendants, including but not limited to Bonke and Tuider.

82.     Specifically, these Defendants were personally involved in Plaintiff's detention in police custody and subsequent case evaluation and knew or, in the absence of their deliberate

indifference and/or recklessness, should have known of their subordinates' unconstitutional actions and related misconduct in the case.

83.     The personal involvement of the supervisory defendants, through their actions and omissions, proximately and directly caused the constitutional deprivations and grievous personal injuries suffered by Larod Styles, including the above-mentioned injuries and damages.

84.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Larod Styles' clearly established constitutional rights.

### Count V – 42 U.S.C. § 1983
### Conspiracy to Deprive Plaintiff of His Constitutional Rights

85.     Each paragraph of this Complaint is incorporated as if restated fully herein.

86.     After the murders of Khaled Ibrahim and Yousef Ali, the Defendant Officers, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals, to deprive Larod Styles of his constitutional rights, including his rights to due process and to a fair trial, all as described in the various paragraphs of this Complaint.

87.     Additionally, before and after Mr. Styles' conviction, the Defendant Officers further conspired to deprive him of exculpatory information to which he was lawfully entitled and which would have led to his not being charged, his acquittal, or his more timely exoneration.

88.     In furtherance of the conspiracy, each of the Defendant Officers engaged in and facilitated overt acts, including but not limited to those set forth above – fabricating evidence, withholding exculpatory evidence, and obtaining involuntary statements – and was an otherwise willful participant in joint activity.

89.     After the murders of Khaled Ibrahim and Yousef Ali, Defendant Alesia, acting within the scope of his employment and under color of law, agreed with the Defendant Officers and other individuals to deprive Larod Styles of his constitutional right against compelled self-incrimination, as provided for by the Fifth Amendment, and described in the various paragraphs of this Complaint.

90.     In furtherance of this conspiracy, Defendant Alesia engaged in and facilitated overt acts, including but not limited to obtaining involuntary statements from Mr. Styles and his co-defendants, and was an otherwise willful participant in joint activity.

91.     As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Mr. Styles' rights were violated, and he suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

92.     As a direct and proximate result of the illicit prior agreements and actions in furtherance of the conspiracies referenced above, Mr. Styles' rights were violated, and he suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

## Count VI - 42 U.S.C. § 1983
## Unlawful Detention (Fourth Amendment)

93.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

94.     In the manner described more fully above, the Defendant Officers caused Plaintiff to be detained and imprisoned without probable cause.

95.     The misconduct described in this Count was undertaken by the Defendant Officers under color of law and within the scope of their employment.

96.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to the rights of others.

97.     As a result of the Defendant Officers' misconduct described in this Count,

Plaintiff suffered damages as set forth above.

**Count VII – 42 U.S.C. §1983**
**Municipal Liability**

98.     Each paragraph of this Complaint is incorporated as if restated fully herein.

99.     The actions of the individual Defendant Officers were undertaken pursuant to the

policies and practices of the Chicago Police Department, described above and below, which

included (1) failing to supervise, discipline and control Chicago Police officers and (2)

maintaining a code of silence within the CPD, all of which facilitated the Defendant Officers'

misconduct here.

100.     These policies and practices were ratified by policymakers for the City of Chicago

with final policymaking authority.

101.     At all times material to this Complaint, Defendant City of Chicago, through its

Police Department, the Office of Professional Standards (OPS), Police Superintendents, Police

Board, Mayor, City Council and/or Corporation Counsel's Office, had interrelated *de facto*

policies, practices, and customs which included, *inter alia*:

a.  conducting physically, psychologically, or otherwise illegal or improperly coercive
    interrogations of witnesses, suspects and arrestees, in order to obtain confessions,
    including from juveniles and teenagers;

b.  manufacturing, fabricating, and/or using improper suggestive tactics to obtain statements
    from suspects and witnesses, particularly juveniles or teenagers;

c.  filing false police reports, and giving false statements and testimony about these
    interrogations, confessions, and witness statements;

d.  suppressing evidence concerning the circumstances of these interrogations and
    confessions;

e.  pursuing and obtaining prosecutions and incarceration on the basis of confessions
    obtained during these interrogations, and otherwise covering up the true nature of the

interrogations, confessions, and witness statements;

f.   failing to video and/or audio tape the interrogation or questioning of suspects, arrestees, and witnesses, particularly in the circumstances set forth in parts (a) and (b), above;

g.   failing to properly train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control police officers, particularly those who were repeatedly accused of physically, psychologically, or otherwise illegally or improperly engaging in coercive questioning or interrogation of witnesses, suspects and arrestees; of torture and related physical abuse of suspects; of false arrests, wrongful imprisonments, malicious prosecutions, and wrongful convictions; and/or of making false reports and statements. This failure to properly train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control specifically includes the "repeater" Defendants named herein, including, but not limited to, Defendants Cassidy, Alesia, Daly, Davis, Valadez, Bloore, Fine, and Coughlin, who have been accused on numerous occasions of such misconduct, including prior to the time period implicated in this case;

h.   the police code of silence, specifically in cases where officers engaged in the violations articulated in paragraphs a through e, above, whereby police officers refused to report or otherwise covered up instances of police misconduct, and/or fabricated, suppressed, and/or destroyed evidence of which they were aware, despite their obligation under the law and police regulations to so report. This code of silence also has resulted in police officers either remaining silent or giving false and misleading information, and/or testimony during official investigations and grand jury proceedings, in order to protect themselves and/or fellow officers from internal discipline, civil liability, or criminal charges, and perjuring themselves in criminal cases where they and/or their fellow officers have been accused of misconduct.

102.   The interrelated pattern and practices alleged above were or should have been well-known within the Chicago Police Department, both before and after Larod Styles was interrogated and wrongfully convicted, as well as by successive mayors, police superintendents and OPS directors, and by the Chicago City Council and the Chicago Police Board, and other policy-making, command, and supervisory City and police personnel, who participated in the cover-up and/or continuation of the policies and practices.

103.   The interrelated policies, practices, and customs set forth above, both individually and together, were maintained and implemented with deliberate indifference.  They encouraged, *inter alia*, the coercing of statements from suspects, witnesses, and arrestees, particularly from

juveniles and other teenagers; the construction and fabrication of confessions, admissions, statements, and other false witness evidence; the suppression and destruction of exculpatory evidence, the intimidation of witnesses, the making of false statements and reports, the giving of false testimony, and the obstruction of justice; and the pursuit and continuation of wrongful convictions and false arrests and imprisonments. The interrelated policies, practices and customs set forth above were, separately and together, a direct and proximate cause (*i.e.* a moving force) of the unconstitutional acts and perjury committed by the named Defendants and their co-conspirators, and the injuries suffered by Larod Styles, including his wrongful conviction and imprisonment.

104.    Additionally, the City of Chicago's failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel the Defendant Officers, including but not limited to Defendants Bloore, Cassidy, Boudreau, and Valadez, was also done with deliberate indifference and likewise acted as a direct and proximate cause (*i.e.* a moving force) of the injuries to Larod Styles.

### Count VIII – State Law Claim Malicious Prosecution

105.    Each paragraph of this Complaint is incorporated as if restated fully herein.

106.    The Defendant Officers, despite knowing that probable cause did not exist to prosecute Larod Styles for the murders of Khaled Ibrahim and Yousef Ali, acted individually, jointly, and/or in concert and in conspiracy, to cause Mr. Styles to be arrested and prosecuted for that crime.  The Defendant Officers made statements to trial prosecutors with the intent of exerting influence and to institute and continue the unjust judicial proceedings.

107.    Specifically, the Defendants were aware that, as described more fully above, no valid or legitimate evidence implicated Larod Styles in the murders.   All inculpatory evidence,

including the supposed line-up identification of Mr. Styles and the inculpatory statements of

Plaintiff, Mr. McCoy, Mr. Ezell, and Mr. Johnson, was coerced and fabricated, and forensic

evidence indicated Larod's innocence.  Furthermore, the Defendant Officers intentionally

withheld from and misrepresented to prosecutors and the grand jury facts that further vitiated

probable cause against Larod Styles, as set forth above, and failed to investigate evidence that

could have led to the actual assailant.  The Defendant Officers performed the above-described

acts deliberately, with malice, and with reckless disregard for Larod Styles' rights.

108.    In February 2017, the Cook County State's Attorney's Office *nolle prossed* Larod

Styles' case, and on January 22, 2018, the Circuit Court of Cook County awarded Mr. Styles a

Certificate of Innocence, which constitutes a termination of the criminal proceedings in his favor.

109.    As a direct and proximate result of this misconduct, Mr. Styles sustained, and

continues to sustain, injuries as set forth above, including pain and suffering.

**Count IX – State Law Claim**
**Intentional Infliction of Emotional Distress**

110.    Each paragraph of this Complaint is incorporated as if restated fully herein.

111.    The acts and conduct of the Defendants, including the Defendant Officers and

Defendant Alesia, as set forth above were extreme and outrageous.  The Defendants' actions

were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or

were in reckless disregard of the probability that their conduct would cause, severe emotional

distress to Larod Styles, as is more fully alleged above.

112.    As a direct and proximate result of the Defendants' actions, Mr. Styles suffered

and continues to suffer severe emotional distress.

### Count X – State Law Claim
### Civil Conspiracy

113.     Each paragraph of this Complaint is incorporated as if restated fully herein.

114.     As described more fully in the preceding paragraphs, the Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

115.     In furtherance of the conspiracy, the Defendant Officers committed unlawful overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Larod Styles.

116.     In furtherance of the conspiracy, the Defendant Officers, acting in concert and conspiracy with Defendant Alesia, committed unlawful overt acts and were otherwise willful participants in joint activity including but not limited to the intentional infliction of emotional distress upon Larod Styles.

117.     The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

118.     As a direct and proximate result of the Defendants' conspiracy, Mr. Styles suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

### Count XI – State Law Claim
### Respondeat Superior

119.     Each paragraph of this Complaint is incorporated as if restated fully herein.

120.     In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department, acting at all relevant times within the scope of their employment and under color of law.

121.    Defendant City of Chicago is liable as principal for all torts in violation of state law committed by its agents.

**Count XII – State Law Claim**
**Indemnification**

122.    Each paragraph of this Complaint is incorporated as if restated fully herein.

123.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

124.    The Defendant Officers are or were employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described herein.

125.    Defendant Alesia was at all times material to this complaint the employee of the Cook County State's Attorney's Office, and Cook County is therefore responsible for any judgment entered against Defendant Alesia and for any judgment entered against him arising from said employment with the County, making the County a necessary party to this complaint.

WHEREFORE, Plaintiff, LAROD STYLES, respectfully requests that this Court enter judgment in his favor and against Defendants JAMES CASSIDY, KENNETH BOUDREAU, LUKE DALY, DWAYNE DAVIS, FRANCIS VALADEZ, BERNARD RYAN, JOHN BLOORE, J. FINE, STEVEN TERRELL, the ESTATE of THOMAS COUHGLIN, THOMAS RICHARDSON, SERGEANT LARRY TUIDER, SERGEANT FRED BONKE, former COOK COUNTY ASSISTANT STATE'S ATTORNEY JOSEPH ALESIA, and the CITY OF CHICAGO, as well as-yet UKNOWN CITY OF CHICAGO EMPLOYEES, and COOK COUNTY ILLINOIS, awarding compensatory damages, attorneys' fees, and costs against each

Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, LAROD STYLES, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**LAROD STYLES**

By: _____*/s/ Terence H. Campbell*_____
One of his attorneys

Terence H. Campbell
COTSIRILOS, TIGHE, STREICKER,
   POULOS & CAMPBELL
33 N. Dearborn, Suite 600
Chicago, IL 60602
(312) 263-0345